GOOD FELLOWS ASSOCIATES, INC. *vs.* WILLIAM M. SILVERMAN & others.

Suffolk. April 3, 1933. — May 25, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, & FIELD, JJ.

*Pledge. Uniform Stock Transfer Act. Corporation,* Transfer of stock, Stockholder, Officers and agents. *Assignment. Notice.*

The agreement of association and the by-laws of a Massachusetts corporation provided in substance that a stockholder desiring to sell his stock should offer it first to the directors in writing, stating a price and naming an arbitrator; that within ten days the directors should either accept the offer or name a second arbitrator; that, in case two arbitrators should be so named, a third should be chosen by them and they then should determine the fair value of the shares; and that if the directors did not purchase the stock at that value within thirty days, the owner might sell it "in any manner he may see fit." These restrictions were printed on the certificates of stock. A stockholder, borrowing money from the corporation, delivered to it a document entitled "Transfer of Stock" in which he recited that he did "grant, sell, assign, transfer, set over and deliver" to the corporation his shares; but he did not deliver nor indorse his certificate. Six months later a second corporation lent money to the same stockholder, who executed a collateral security note in the usual form stating that

his shares in the first corporation were deposited with the second corporation as collateral security and that, upon default in payment of the note, they might be sold; and his certificate, still unindorsed, was delivered to the second corporation. The general manager of the second corporation was a stockholder of the first. Except as affected by that fact and by the restriction printed on the certificate, the second corporation received the collateral note and the delivery of the certificate for consideration and in good faith and without knowledge of the previous assignment. The stockholder became bankrupt. The first corporation on its books credited him on his loan with the value of the shares. After default upon his note to the second corporation, it, in accordance with the by-law requirements, notified the directors of the first corporation of its intention to sell the shares. In reply those directors stated in effect that the shares had been assigned to the first corporation and that it did not recognize a title in the second corporation. Upon the foregoing facts, agreed to by the parties in a suit in equity by the first corporation against the second to require delivery of the shares to the plaintiff, a final decree was entered in substance adjudging the shares to be the defendant's. The plaintiff appealed. *Held*, that

(1) Under G. L. (Ter. Ed.) c. 155, § 27, there was no effective transfer of title of the shares to the plaintiff absolutely or in mortgage or in pledge;

(2) The only rights of the plaintiff in the shares were equitable, and were subject to those of the defendant unless the defendant took with notice of the plaintiff's rights;

(3) An inference was not warranted that the defendant had actual knowledge of the transfer to the plaintiff;

(4) The mere fact that the general manager of the defendant also was a stockholder of the plaintiff did not warrant an inference that he had knowledge of the assignment to the plaintiff;

(5) The defendant did not hold title to the stock evidenced by the certificate as owner, but held the stock in pledge, with power to sell upon default, subject to the restriction printed on the back of the certificate;

(6) The restriction printed on the certificate as to sale of the stock looked to a sale and had no natural application to a pledge of the stock, a pledge not transferring title as does a mortgage;

(7) The defendant, upon the refusal of the plaintiff to purchase the stock, became entitled under the restriction to have the corporation issue new certificates of stock;

(8) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on January 5, 1926, and described in the opinion.

The plaintiff is a Massachusetts corporation. The suit was heard in the Superior Court by *C. H. Donahue*, J., upon an agreed statement of facts, set out in full in the opinion. The collateral security note received by the

defendant Citizens Finance Corporation as therein stated was in the usual form, and recited that the borrower had "deposited with" that defendant "as collateral security for payment of" the loan described in the note "or any other direct or indirect liability or liabilities" of the borrower to the defendant the shares described in the opinion, with the right in the defendant, upon default of the borrower, "to sell and assign and deliver the whole of said property, or any part thereof, or any substitute therefor, or any additions thereto, at any Broker's board, or at public or private sale, at the option of said Citizens Finance Corporation or their assigns, and with the right to be purchasers themselves at such promise, or the non-payment of any of the liabilities above mentioned, or at any time or times thereafter, without advertisement or notice."

Findings by the judge, and a final decree entered by his order, are described in the opinion. The plaintiff appealed.

*M. N. Abrahamson,* (*S. J. Bloom* with him,) for the plaintiff.

*M. Bean,* for the defendants.

PIERCE, J. This is a bill in equity wherein the plaintiff seeks to compel the defendant Citizens Finance Corporation to deliver to it thirty-four certificates of the plaintiff's capital stock alleged to have been unlawfully transferred to said defendant in violation of the plaintiff's rights.

Following the filing of answers by the defendants, and the allowance by the court of a motion filed by the defendant Citizens Finance Corporation in the nature of a cross bill, the parties filed an "Agreed Statement of Facts" which concluded with a paragraph reading: "No question of pleadings is raised and it is agreed that all pleadings may be referred to in the determination of the issues herein presented." The following is the statement of facts agreed upon by the parties: "The plaintiff seeks possession of certificates for thirty-four shares of its corporate stock now in the possession of Citizens Finance Corporation. Certificates for fourteen of these shares were issued to George Gordon and certificates for twenty shares to Gordon's Value Shop, Inc., a corporation, which is hereinafter re-

ferred to as 'Gordon's Shop.' 'Gordon's Shop' on January 27, 1925, signed and delivered to the plaintiff a document entitled 'Transfer of Stock' reciting that 'Gordon's Shop' did 'grant, sell, assign, transfer, set over and deliver' to the plaintiff 'all the shares and certificates of the Capital Stock' of the plaintiff 'standing in my name on the books of the aforesaid Corporation at this time and that shall be placed in my name.' George Gordon, on March 2, 1925, signed and delivered to the plaintiff a similar document. The purpose of the execution of these documents of transfer was to secure loans made by the plaintiff corporation to 'Gordon's Shop' or for the benefit of 'Gordon's Shop,' although this purpose was not recited in the documents signed and delivered to the plaintiff. There was no delivery by 'Gordon's Shop' or by George Gordon to the plaintiff of the certificates of stock held by them and no indorsement of these certificates. Possession of these certificates was retained by 'Gordon's Shop' and by George Gordon until they were delivered to the Citizens Finance Corporation on June 29, 1925. On December 29, 1925, there was due the plaintiff on account of loans made to or for the benefit of 'Gordon's Shop' a balance of $1,881.82. On that date, the plaintiff credited on its books on account of this balance the value of the thirty-four shares which had been issued to 'Gordon's Shop' and George Gordon, the value of such shares as so credited being on the basis of $50 per share. This left a balance due of $181.82. That amount has since been paid the plaintiff by Maxwell Gordon, who had been treasurer of 'Gordon's Shop.' 'Gordon's Shop' was adjudicated a bankrupt on October 16, 1925. On June 29, 1925, the Citizens Finance Corporation loaned to 'Gordon's Shop' $2,400 and received a collateral note signed by 'Gordon's Shop' and by George Gordon, a copy of which is hereto annexed. The Citizens Finance Corporation received a bonus of $110 for this loan. On the principal sum of $2,400 recited in this note, there is now due and unpaid $1,432. On August 1, 1925, the Citizens Finance Corporation made an additional loan of $400 to 'Gordon's Shop,' which is now due and unpaid. Contemporaneously

with the signing and delivery of the note for $2,400, 'Gordon's Shop' delivered to the Citizens Finance Corporation certificates for twenty shares of the capital stock of the plaintiff corporation, and George Gordon delivered certificates for fourteen shares of the capital stock of the plaintiff corporation. There were no indorsements on the certificates. As recited in the note, these shares were delivered as collateral security for liabilities of the makers 'due or to become due or that may be hereafter contracted.' The Citizens Finance Corporation made the loans to or for the benefit of 'Gordon's Shop' and received the collateral note and the delivery of the certificates for consideration and in good faith except as the same may be affected by the restriction appearing on the stock certificates, and coupled with the fact that Robert Porter, the general manager of the defendant corporation, was also a stockholder in the plaintiff corporation, without knowledge that 'Gordon's Shop' or George Gordon had made an assignment of these shares of stock as security for loans by the plaintiff. On January 20, 1926, the Citizens Finance Corporation gave notice in writing to the directors of the plaintiff corporation of its desire to sell the thirty-four shares of stock in accordance with the by-laws of the plaintiff corporation. The notice stated the price at which it was willing to sell and named one arbitrator. The directors of the plaintiff corporation did not accept the offer within ten days, but, on the contrary, on January 28, 1926, in writing stated that the shares in question had been assigned to the plaintiff and asserted that the plaintiff did not recognize the title of the Citizens Finance Corporation. In accordance with a stipulation, the Citizens Finance Corporation filed claim in the bankruptcy proceedings against 'Gordon's Shop' without prejudice to its rights in this action. Dividends amounting to $402.64 have been received on account of that claim and have been deposited in a bank and [are] to be disposed of in accordance with the stipulation in the final decree in this action. The trustee in bankruptcy appeared before the court and disclaimed any interest in the deposit. A further stipulation of the plaintiff and the Citizens

Finance Corporation provides that the deposit shall be awarded to that one of the two parties who is not awarded the certificates of stock.  Each certificate of stock of the plaintiff corporation had printed on the back thereof the following restrictions as provided for in the agreement of association and by-laws of the plaintiff corporation: 'Any stockholder, including the heirs, Executors or administrators of a deceased stockholder, desiring to sell the common stock owned by him or them shall first offer it to the directors for the corporation in the manner following: He shall notify the directors of his desire to sell by a notice in writing, which notice shall contain the price at which he is willing to sell and the name of one arbitrator.  The directors shall within ten days thereafter either accept the offer or by notice to him in writing name a second arbitrator, and these two shall choose a third.  It shall then be the duty of the arbitrators to ascertain the fair value of the said stock, and, if either party shall neglect or refuse to appear at the hearing appointed by said arbitrators, they may act in the absence of said parties.  After the acceptance of the offer or the report of the arbitrators as to the value of said stock, the directors shall have thirty days within which to purchase the same at such valuation, but if at the expiration of said thirty days the corporation through its directors shall not have executed its right so to purchase, the owner of said stock shall be at liberty to dispose of the same in any manner he may see fit.'  The foregoing restrictions appear on the certificates for the thirty-four shares of stock purchased by the defendant Citizens Finance Corporation from the said Gordon's Value Shop, Inc. and George J. Gordon.  Robert Porter was the general manager of the defendant Citizens Finance Corporation, an officer since its incorporation, and had charge and managed all of the business of the defendant corporation.  Robert Porter was a stockholder of the plaintiff corporation for some time prior to the loan made by the defendant, Citizens Finance Corporation.  The plaintiff has declared dividends on each share of its common stock amounting to $16 per share from January 26, 1926, to the

date of this agreed statement of facts, and thirty-four shares of stock would entitle the holder to $544 in dividends."

The trial judge upon the above agreed facts found and ruled "that the Citizens Finance Corporation made the loans to or for the benefit of 'Gordon's Shop' and received the collateral note and the delivery of the certificates in good faith, for consideration, without knowledge or reasonable grounds to believe, that 'Gordon's Shop' or George Gordon had made an assignment of these shares of stock as security for loans by the plaintiff; that there was no transfer of legal title to the shares of stock to the plaintiff corporation; that the Citizens Finance Corporation became entitled to the possession of the certificates of stock as security for its loans, and, subject to the provisions of the by-laws of the corporation printed on the certificates of stock, entitled to sell the stock and apply the proceeds to its loans."

In accord with the request of the plaintiff numbered 6, the trial judge ruled that all knowledge pertaining to the Good Fellows Associates, Inc. possessed by Robert Porter, as principal stockholder, general manager and in complete charge of the business of the Citizens Finance Corporation at the time of the delivery of the shares of stock by George Gordon, is chargeable to the Citizens Finance Corporation; and further ruled with the request of the plaintiff numbered 8 that "If the shares of stock of the Good Fellows Associates, Inc. were pledged to secure a loan made by the Citizens Finance Corporation as claimed by Robert Porter, then said company is in the position of a purchaser within the meaning of chapter 155 of the stock transfer act and is, therefore, chargeable with the restrictions on the transfer of said shares." All other requests for rulings of law or findings of fact were denied by the trial judge because not applicable to the facts found. A final decree was entered in accordance with the order that a decree be entered establishing the right of the Citizens Finance Corporation to the certificates of stock and the right of the plaintiff to the deposit in the bank with its accumulations, and dismissing the bill with costs. From this final decree the plaintiff appealed to this court.

The issues presented by the plaintiff's brief are (1) On the

agreed facts did the Citizens Finance Corporation have actual or constructive notice on June 29, 1925, the date when it lent money to "Gordon's Shop" and received a collateral note and thirty-four shares of stock of the plaintiff corporation that the "Gordon's Shop" and George Gordon on January 27, 1925, and March 2, 1925, had each signed and delivered to the plaintiff a document, entitled "Transfer of Stock," reciting that the "Gordon's Shop" (or George Gordon) did "grant, sell, assign, transfer, set over and deliver" to the plaintiff "all the shares and certificates of the Capital Stock" of the plaintiff "standing in my name on the books of the aforesaid Corporation at this time and that shall be placed in my name"; and (2) Did the Citizens Finance Corporation have actual or constructive notice on June 29, 1925, that these documents of transfer were executed to secure loans made or to be made by the plaintiff corporation to "Gordon's Shop" or for the benefit of "Gordon's Shop"?

It is agreed that the certificates of stock referred to in these documents were not delivered to the plaintiff, were not indorsed and were retained by "Gordon's Shop" and George Gordon until they were delivered as collateral security to the Citizens Finance Corporation on June 29, 1925. Under G. L. (Ter. Ed.) c. 155, § 27, these documents were not effective to transfer the title to the shares of stock absolutely or in mortgage or pledge, because the certificates were not delivered indorsed in blank or to a specified person. It would follow that the only title vested in the plaintiff perforce of these documents was an equitable title to the stock by way of pledge or mortgage which might be enforced between the parties and against all persons taking the certificates of stock with notice of the plaintiff's equitable right. G. L. (Ter. Ed.) c. 155, § 36. In the pending case there is nothing in the agreed facts to warrant an inference that the Citizens Finance Corporation had actual knowledge of the transfer of stock from "Gordon's Shop" and from George Gordon to the plaintiff in pursuance of any agreement of the plaintiff to lend money to the "Gordon's Shop" on the security of the thirty-four shares of stock held by the "Gordon's Shop" or George Gordon. The mere fact that Robert

Porter at the time of the "Transfer of Stock" was the general manager of the Citizens Finance Corporation and a stockholder in the plaintiff corporation did not warrant an inference that he had knowledge that the "Gordon's Shop" or George Gordon had made an assignment of these shares as security for loans by the plaintiff. The law is settled that in the absence of statute, by-law or agreement a corporation has no lien upon the stock of a stockholder for a debt due from the stockholder. *Lask* v. *Bedell, Inc.* 91 N. J. Eq. 341, 345. 33 Am. L. R. 1272, note.

Did the restriction printed on the back of the stock certificates prevent the Citizens Finance Corporation from obtaining a title to the stock after notice in writing to the directors of the plaintiff corporation of its desire to sell the thirty-four shares of stock in accordance with the by-law of the plaintiff corporation and after an assertion by the plaintiff that it did not recognize the title of the Citizens Finance Corporation? It is plain the Citizens Finance Corporation did not hold title to the stock evidenced by the thirty-four certificates of stock as owner, but held such in pledge, with power to sell upon default, subject to the restriction printed on the back of the certificates for the thirty-four shares of stock. It is obvious that the restriction looks to a sale and has no natural application to a pledge of stock which does not transfer title as a mortgage does. The Citizens Finance Corporation upon the refusal of the plaintiff to purchase the stock became entitled under the restriction to have the corporation issue new certificates of stock. *Bond* v. *Mount Hope Iron Co.* 99 Mass. 505, 507. *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 17. *Handy* v. *Miner,* 258 Mass. 53, 61.

*Decree affirmed with costs.*