MELVIN M. JOHNSON & another, trustees, *vs.* MELVIN M. JOHNSON & others, executors, & others.

Suffolk.    December 27, 1937. — March 16, 1938.

Present: FIELD, LUMMUS, QUA, DOLAN, & COX, JJ.

*Corporation*, Transfer of shares.    *Uniform Stock Transfer Act.*    *Gift.*
    *Trust*, Validity.    *Equity Pleading and Practice*, Rehearing.

No abuse of discretion appearing, there was no error in the denial of a motion for rehearing of a suit in equity.

The mere gratuitous execution under seal, by the owner of shares of stock and another, of an instrument entitled a "declaration of trust," asserting that they had received an assignment of shares as trustees for the benefit of the owner's daughter and others, and the execution by the owner of such an assignment, but without delivery of a certificate of the shares indorsed or with a power of attorney, were ineffectual to vest in the trustees either a legal or an equitable title to the shares.

BILL IN EQUITY, filed in the Superior Court on June 22, 1932.

After a hearing by *Williams*, J., one of the plaintiffs, Edith P. Sheppard, moved for a rehearing. The motion was denied and a final decree entered. She appealed from the denial of the motion and from the final decree.

The case was submitted on briefs.

*G. Newhall & M. J. Cohen,* for the plaintiff Sheppard.

*J. W. Black, Jr.,* for the defendant executors.

DOLAN, J.   This is a suit in equity brought in the Superior Court by the plaintiff trustees under a "Declaration of Trust." The prayer of the bill is "That the court may enter a decree that the said trust is valid and subsisting and that the corpus thereof is free from all claims of the creditors of the . . . [deceased], Arthur G. Pollard." The deceased was a resident of Lowell at the time of his death on June 4, 1930, and the defendants Johnson, Harry G. Pollard and Sawyer are the duly qualified executors of his will. The plaintiff Johnson is the same person as the defendant executor Johnson. The plaintiff Edith P. Sheppard is a daughter of the deceased and the principal beneficiary under the alleged trust. The executors of the will of the deceased, hereinafter referred to as the executors, filed an answer in which they prayed that the trust be decreed not to be valid and that its corpus be decreed to be assets of the estate of the deceased.

The evidence is not reported. The judge filed a statement of findings and order for decree on July 25, 1933. On May 28, 1937, the plaintiff Sheppard, hereinafter referred to as Mrs. Sheppard, filed a motion for rehearing, alleging that the trial of the case was conducted for her and her cotrustee Johnson by a representative of the latter's law firm, and for the defendant executors, of whom Johnson is one, by another representative of the same law firm; that she received no notice to be present at the trial and did not testify; that she could have testified that there had been a complete communication of the trust to her by the deceased; that the question whether the defendant Union Old Lowell National Bank knew of the existence of the trust prior to the date of its loan to the deceased should have been presented to the court; and that there was evidence to show such knowledge on the part of its president, who is also one of the executors. She further represented that she had no knowledge of the findings of the judge until May 24, 1937. The motion, which was sworn to by Mrs. Sheppard,

was denied by the judge on May 28, 1937, and on June 1, 1937, a final decree was entered that no valid trust was created by the declaration of trust involved, and that the shares of stock referred to therein were assets of the estate of the deceased, free from trust, but subject to the claims of the defendant Union Old Lowell National Bank.

The record discloses that on November 20, 1929, the deceased and Johnson executed an instrument under seal, in which they acknowledged that they had received as trustees "under this Declaration of Trust" an assignment of fifty shares of the Proprietors of the South Congregational Meeting House in Lowell, a corporation duly organized under the laws of the Commonwealth. They acknowledged and declared that they had received the assignment to be held in trust, the income from the trust estate to be accumulated during the life of the deceased, and thereafter until the beneficiaries should give notice to the trustees of their desire to receive it. After the death of the deceased his daughter, Mrs. Sheppard, was to receive the net income upon notice by her to the trustees. Mrs. Sheppard was given the power to appoint the trust estate by will. Other provisions of the instrument providing for the disposition of the trust estate in default of appointment, and which would create an interest in certain other living persons as well as a possible interest in persons unascertained or not in being, need not be recited in detail. The instrument provided that the trust could be terminated during the life of the deceased, but only by an agreement in writing signed by the trustee or trustees for the time being and also by Mrs. Sheppard, and, if she were not living, "by the then present beneficiaries who are living and of full age." The "Declaration of Trust" recites its purpose to be as follows: "The purpose of this Declaration of Trust is to provide a reserve fund for the protection of the beneficiary and beneficiaries hereunder and so that if other financial circumstances should be adverse, there will still be a fund available for her or their support and maintenance. To this end, said Arthur G. Pollard, the Settlor, suggests to the beneficiaries that they, by will or otherwise, from time to time create a similar trust for the benefit of

their descendants. This is made as a suggestion and not as a requirement and is not intended in any way to extend the operation of this trust beyond the period permitted by the laws against perpetuities." The instrument was signed and sworn to by the deceased and Johnson. After the death of the deceased Mrs. Sheppard, on June 12, 1930, in accordance with the terms of the trust instrument, nominated and appointed herself as trustee to serve with Johnson.

The present suit was begun on June 22, 1932. A guardian *ad litem* was appointed to represent the possible interests of persons unascertained or not in being. The judge found that, at the time of the execution of the "Declaration of Trust," the deceased also executed an assignment with power to transfer the stock in question in the usual form; that he retained the assignment in his possession, but that it was not found among his papers by the executors and has disappeared. Other findings of the judge are as follows: "At the time of the execution of these papers, said 50 shares of stock were in fact in the possession of the Merchants National Bank of Boston, having been pledged by Pollard to said Bank as collateral security for a loan of $90,000. No delivery of these shares was ever made to the named trustees, nor did Johnson ever see these shares. Thereafter Pollard continued to deal with said shares as if they were his personal property. He received the dividends paid on them and devoted said dividends to his personal use. He had been advised by Johnson, who is an attorney, that when he did get possession of the certificate for the shares he should use these forms above referred to which had been executed and have the shares transferred on the books of the corporation to the names of the trustees. This was never done. No account was opened in any bank or in Pollard's own books in the names of the trustees. On February 17, 1930, Pollard borrowed $200,000 from one Hanchett, one Sawyer and from the Union Old Lowell National Bank. Of this amount, $25,000 was borrowed from the bank and an assignment of the shares of stock in the form above referred to was given to the bank and the bank was told by Pollard to pay off his loan at the Merchants National Bank. The balance of the loan, then

$85,000, was paid and the Union Old Lowell National Bank received from the Merchants National Bank these shares of stock. Thereafter the Lowell bank, by arrangement with Pollard, held these shares of stock to secure not only the loan of $25,000, but also two other loans made to stockholders of a corporation in which Pollard was interested, on the notes of said stockholders, endorsed by Pollard. At the time of Pollard's death the Lowell bank still held the shares of stock as security on the balances remaining due on these loans. The bank had never been advised of any trust in connection with these shares of stock. At the present time the executors of the estate of Pollard have not sufficient assets to pay the indebtedness of the estate."

The motion for rehearing was addressed to the discretion of the judge. *Macomber* v. *King*, 288 Mass. 381 383. There are no findings in the record as to this subject matter, but even if the facts sworn to in the motion were uncontradicted, the judge was not bound to believe them. *Commonwealth* v. *Millen*, 290 Mass. 406, 410, and cases cited. In the absence of contrary findings the denial of the motion "imports a finding of all subsidiary facts necessary to justify the action taken." *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 85. See also *Nicoli* v. *Berglund*, 293 Mass. 426; *Germain* v. *Raad*, 297 Mass. 73, 75. It was proper for Johnson, in view of his antagonistic interests as one of the trustees under the "Declaration of Trust" and as one of the executors of the will of the deceased, to bring the present suit to determine the validity of the trust. *Bemis* v. *Converse*, 246 Mass. 131. No abuse of discretion appears in the action of the judge in denying the motion for rehearing.

The attempted transfer of the shares of stock involved by assignment was gratuitous. "No delivery of . . . [them] was ever made to the named trustees" and the trustee Johnson never saw them. They were never transferred on the books of the corporation into the names of the trustees. The question is whether the title, legal or equitable, to the shares of stock ever vested in the trustees. The shares of stock being those of a Massachusetts corporation, it is necessary to examine the provisions of the statutes relating

to the transfer of title to certificates of stock or to the shares represented thereby.

G. L. (Ter. Ed.) c. 155, § 36, provides in cases of transfer of stock: "An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer, and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts." Under § 27, legal title to a certificate and the shares represented thereby is transferred only by a delivery of the certificate indorsed, or by the delivery of the certificate and a written assignment or power of attorney. *Bellows Falls Power Co.* v. *Commonwealth,* 222 Mass. 51, 58. *Place* v. *Chaffee,* 251 Mass. 508, 510. Where there is an ineffective transfer as by delivery of a written assignment without the certificate (the case at bar), and consideration has been paid, under § 36, if the intention to transfer both legal and equitable title is clear, the attempted transfer will be regarded as vesting equitable title in the transferee with an implied promise to transfer legal title to him, enforceable in accordance with the law of contracts. *Good Fellows Associates, Inc.* v. *Silverman,* 283 Mass. 173, 180. The present case differs in its facts from a situation where the certificate of stock is delivered as a gift but no indorsement or separate assignment is given, which is governed by § 35. In those circumstances a donee acquires equitable title to the shares with a right to compel a formal transfer of the legal title, independent of any consideration to support a promise to transfer legal title. *Herbert* v. *Simson,* 220 Mass. 480. *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442, 444. *Stuart* v. *Sargent,* 283 Mass. 536, 542. *Whitney* v. *Nolan,* 296 Mass. 419, 424.

Though no form of transfer of legal title without delivery is recognized by the uniform stock transfer act (*Place* v. *Chaffee,* 251 Mass. 508, 510; *Stuart* v. *Sargent,* 283 Mass. 536, 540), the act does not bar the transfer of equitable title. *Edgerly* v. *First National Bank of Boston,* 292 Mass. 181, 185. Nevertheless, where this is accomplished by delivery of an assignment without the certificate (*Good*

*Fellows Associates, Inc.* v. *Silverman,* 283 Mass. 173), § 36 applies, and where the ineffective transfer is gratuitous, the implied promise to convey legal title cannot be enforced because there is no consideration to support it. The obligation, if any, imposed by such promise being determined by the law governing contracts, if there is no consideration, the promise will not be enforced.

It follows, therefore, in the case at bar, that the legal title to the certificate of stock or to the shares represented thereby did not vest in the trustees because the transfer was not made in compliance with the provisions of § 27, and that, the attempted transfer being ineffective and without consideration, the implied "promise to transfer" cannot be enforced under the provisions of § 36. The result is that no title, legal or equitable, to the certificate or the shares ever vested in the trustees and that the trust which the deceased and Johnson purported to declare fails for want of a *res* to support it. The entry will be

*Decree affirmed.*