CHARLES H. LANE *vs.* VOLUNTEER CO-OPERATIVE BANK OF BOSTON.

Suffolk.   May 7, 1940. — December 10, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Coöperative Bank. Lien. Assignment. Corporation,* Transfer of stock. *Uniform Stock Transfer Act. Conversion.*

Under G. L. (Ter. Ed.) c. 155, § 40, a coöperative bank has no lien, not stated in the certificate, on matured shares for any indebtedness of the shareholder to it.

The provisions of the uniform stock transfer act contained in G. L. (Ter. Ed.) c. 155, § 27, were inapplicable to a delivery of an indorsed certificate for matured shares in a coöperative bank, accompanied by a separate assignment of the shares but without a transfer on the books of the bank; the assignee thereby acquired only an equitable title.

An assignee having possession of a certificate for matured shares of a coöperative bank, but only an equitable title to the shares, had no such legal right to immediate possession as to enable him to maintain an action against the bank for conversion of the shares in having without out right applied their value toward payment of a debt owed by the assignor to the bank and in refusing to transfer them to the plaintiff.

TORT.   Writ in the Municipal Court of the City of Boston dated May 26, 1939.

The action was heard by *Adlow,* J.   The plaintiff requested the following rulings:  "1. A corporation has no lien or restrictions on unpledged capital stock for debts due unless the right to such lien or restrictions are stated

on the stock certificate.  2. The defendant bank had no lien upon the shares as security for any claim against the assignor, and it was bound to make a transfer of the shares on its books as demanded and to issue a new certificate to the assignee and the failure so to do, when demanded by the assignee was a conversion.  3. It is the duty of a corporation to issue a new certificate of stock upon surrender of the old certificate properly endorsed or assigned." The judge refused to grant the requests; found that the plaintiff's assignor had become indebted to the defendant by virtue of a deficiency on a mortgage and that the indebtedness was in excess of the shares; that a considerable period prior to the assignment the assignor had been notified by the defendant that it was applying the value of the shares toward indebtedness.  He stated that he did "not find that the defendant committed an act of conversion," that by finding for the defendant he did not rule "that the bank acted properly in the matter"; and: "I desire my finding to be construed to mean that one who stands in no better position than his assignor cannot avoid the consequences of a set-off which the defendant might set up against his assignor by bringing his claim in an action of conversion."

*E. McGonagle,* for the plaintiff.

*J. F. Daly,* for the defendant.

LUMMUS, J.  Anna V. Madden owned five matured shares of the defendant bank, represented by a certificate issued December 4, 1934.  When on May 10, 1939, she assigned the shares to the plaintiff by a sealed assignment, as well as by delivery of an indorsed certificate, she owed the defendant a balance, larger than the value of the shares, upon a mortgage note, after the proceeds of a foreclosure sale and apparently also the value of any shares pledged as security for the mortgage debt, had been credited upon the note.  See G. L. c. 170 (St. 1933, c. 144), § 27.  The judge found that there was no consideration for the assignment. Prior to the assignment the defendant had notified the assignor that it had applied the matured shares in question toward the discharge of the indebtedness to the defendant. When on May 26, 1939, the plaintiff presented to the defend-

ant the indorsed certificate for transfer into his name, the defendant refused to make the transfer, evidently on the ground that the shares no longer had value or even existence. The plaintiff then brought this action for conversion of the matured shares. The judge found for the defendant, and the Appellate Division dismissed a report. The plaintiff appealed.

In coöperative banks there are three classes of stock, all of the ultimate value of $200 a share: (1) unmatured shares, that are in process of being paid for by instalments, and are represented by a pass book, G. L. c. 170 (St. 1933, c. 144), §§ 12, 48; (2) matured shares (§§ 20, 21), that were once unmatured but have been paid up in full to the ultimate value of $200 a share, and, instead of being paid off in the normal course, by the concurrence of the shareholder and the directors are permitted to continue, represented by a certificate, until withdrawn by the shareholder under § 17 or retired by the directors under § 19; (3) paid-up shares (§ 12), which resemble matured shares, but are paid for in full by the shareholder as soon as issued. The shareholders control the corporation. §§ 6, 7. "Shares, whether matured, unmatured or paid-up, may be transferred only on the books of the corporation, in such manner as its by-laws may provide." § 42. Matured and paid-up shares are entitled to the same rate of dividends as unmatured shares, up to five per cent per annum. § 44.

The act of the defendant in applying the matured shares to the payment of the indebtedness to the defendant, cannot be deemed a retirement of the shares which would leave no liability upon the defendant except in contract for the payment of the value of the shares with interest. G. L. c. 170 (St. 1933, c. 144), § 19. It is true that under that section the directors may "retire matured or paid-up shares at any time and in such order and manner as they may provide." But the application of the matured shares to the payment of the indebtedness did not purport to be a retirement of the shares, it is not shown to have been the act of the directors who were the only officers having power to retire matured shares, and the action taken does not appear

to have been taken under any "rules made by" the directors for the retirement of shares, as that section requires.

The defendant could have on the matured shares no lien, not stated in the certificate, for the payment of any indebtedness of the shareholder. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 99. *Massachusetts Iron Co.* v. *Hooper,* 7 Cush. 183. *Merrill* v. *Cape Ann Granite Co.* 161 Mass. 212, 218. *Good Fellows Associates, Inc.* v. *Silverman,* 283 Mass. 173, 181. G. L. (Ter. Ed.) c. 155, § 40. A coöperative bank is within the section last cited. G. L. (Ter. Ed.) c. 155, § 1. St. 1935, c. 297, § 1. G. L. c. 170 (St. 1933, c. 144), §§ 1, 2.

As distinguished from the extinguishment of cross demands up to the amount of the smaller by mutual agreement presently to be executed (*Cary* v. *Bancroft,* 14 Pick. 315, 317; *Doody* v. *Pierce,* 9 Allen, 141, 143; *Gray* v. *White,* 108 Mass. 228; *Davis* v. *Thompson,* 118 Mass. 497; *Blanchard* v. *Blanchard,* 122 Mass. 558, 562; *Winchester* v. *Sibley,* 132 Mass. 273; *Taylor* v. *Lewis,* 146 Mass. 222; *Vrusho* v. *Vrusho,* 258 Mass. 185, 187; *Columbian Ins. Co.* v. *Bean,* 113 Mass. 541, 543; *Union Mutual Marine Ins. Co.* v. *Howes,* 124 Mass. 470; for equitable relief, see *Holbrook* v. *Bliss,* 9 Allen, 69, 77; *Abbott* v. *Foote,* 146 Mass. 333, 334), or in a mutual and open account current requiring such a mutual agreement (*Eldridge* v. *Smith,* 144 Mass. 35; *Boston* v. *Nielsen,* 305 Mass. 429, 431, and cases cited), set-off is an incident of judicial proceedings in which both parties become actors and is accomplished only by judicial action. G. L. (Ter. Ed.) c. 232, §§ 8, 10, 11. *Minor* v. *Walter,* 17 Mass. 237. *Cary* v. *Bancroft,* 14 Pick. 315, 318. *Butterworth* v. *Smith,* 240 Mass. 192, 193. *Friend Lumber Co. Inc.* v. *Armstrong Building Finish Co.* 276 Mass. 361, 370. In an action for conversion set-off is not allowed. G. L. (Ter. Ed.) c. 232, § 1. *Jarvis* v. *Rogers,* 15 Mass. 389, 398, 415–416. *Pitts* v. *Holmes,* 10 Cush. 92, 94. *Talbot* v. *Whipple,* 7 Gray, 122, 124. *Cains* v. *Tirrell,* 112 Mass. 22. Since there could be no set-off in the present action, the rule that an assignee ordinarily takes subject to set-off is immaterial and inapplicable. *Forastiere* v. *Springfield Institution for Savings,* 303 Mass. 101.

The matured shares in question, until actually retired, constituted valuable rights to principal and dividends, and had attached to them important voting rights. The record presents no. question of transfer to the plaintiff in fraud of creditors of the assignor, including the defendant. No consideration was necessary for a transfer of the shares, for one reason because the certificate was delivered to the plaintiff with a transfer under seal. See also *Herbert* v. *Simson*, 220 Mass. 480. He was entitled to have the transfer registered on the books, both at common law and by statute. G. L. (Ter. Ed.) c. 155, § 46.

Under a provision, formerly common with respect to corporations in general, that shares of stock shall be transferable only on the books of the corporation, a transfer by assignment and delivery of the certificate passed only an equitable title. *Sibley* v. *Quinsigamond National Bank*, 133 Mass. 515, 518–521. *Central National Bank* v. *Williston*, 138 Mass. 244. *Andrews* v. *Worcester, Nashua & Rochester Railroad*, 159 Mass. 64. *Clews* v. *Friedman*, 182 Mass. 555. *Baker* v. *Davie*, 211 Mass. 429, 437, 438. *Herbert* v. *Simson*, 220 Mass. 480. Lowell, Transfer of Stock (1884) § 104. Compare *Boston Music Hall Association* v. *Cory*, 129 Mass. 435. By St. 1881, c. 302, St. 1884, c. 229, R. L. (1902) c. 109, § 37, St. 1903, c. 423, and St. 1903, c. 437, § 28, rights at law and not merely in equity were given to a transferee for value before transfer on the books, but the corporation might nevertheless treat the holder of record as the owner. The uniform stock transfer act, St. 1910, c. 171, §§ 1, 3, now G. L. (Ter. Ed.) c. 155, §§ 27, 29, provides for transfer of full legal title by delivery and indorsement of the certificate. *Johnson* v. *Johnson*, 300 Mass. 24.

But as to shares in coöperative banks, the applicable statute, which originated after the enactment of the uniform stock transfer act, has not followed that act but has adopted the older provision that shares "may be transferred only on the books of the corporation." St. 1912, c. 623, § 33. St. 1914, c. 643, § 8. G. L. c. 170, § 39. G. L. c. 170 (St. 1933, c. 144), § 42. The number of shares that any one person may hold is narrowly limited. G. L. c. 170

(St. 1933, c. 144), § 16. Shares in coöperative banks are designed to aid in the benevolent purposes of such banks, and not to afford means for trading and speculation. We think that they are not brought within the uniform stock transfer act, either by the provision of that act (G. L. [Ter. Ed.] c. 155, § 27) that legal title to shares may be transferred by delivery of the certificate with an indorsement or a separate document containing an assignment "although the charter or articles of organization or code of regulations or by-laws of the corporation issuing the certificate, and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation," or by the declaration in G. L. (Ter. Ed.) c. 155, § 1, that "The provisions of this chapter, unless expressly limited in their application, shall apply to all corporations created by or organized under the laws of the commonwealth, except so far as they are inconsistent with other provisions of law relative to particular corporations or classes of corporations." We think that without transfer on the books of the corporation the plaintiff acquired no more than an equitable title to the shares, coupled with a legal right to the possession of the certificate.

The objection to an action for conversion of shares of stock, that a share is not a tangible chattel (Lowell, Transfer of Stock [1884], §§ 11, 238) has not prevailed generally. *London, Paris & American Bank, Ltd.* v. *Aronstein,* 117 Fed. 601, 605, 606. *American Steel Foundries* v. *Hunt,* 79 Fed. (2d) 558. *Virginia Public Service Co.* v. *Steindler,* 166 Va. 686. *Dooley* v. *Gladiator Consolidated Gold Mines & Milling Co.* 134 Iowa, 468. See *Bond* v. *Mount Hope Iron Co.* 99 Mass. 505; *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 17, 18; *Handy* v. *Miner,* 258 Mass. 53, 61, 62. See also the cases cited in 21 Am. L. R. 390, 54 Am. L. R. 1157, 18 C. J. S. Corporations, § 438, 65 C. J. 21, Christy, Transfer of Stock (1940) §§ 14, 266, and Fletcher, Cyc. of Corp. (1932) § 5523.

In other forms of action a transferee having no legal title could recover the value of the stock from the corporation upon its wrongful refusal to transfer the stock on

the books. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 98, 100. *Sargent* v. *Essex Marine Railway,* 9 Pick. 202. *Hussey* v. *Manufacturers & Mechanics' Bank,* 10 Pick. 415, 423. *Wyman* v. *American Powder Co.* 8 Cush. 168. See *Hall* v. *Paine,* 224 Mass. 62, 66.

But in an action for conversion the plaintiff must have a present legal right to immediate possession of the thing converted. *Bacon* v. *George,* 206 Mass. 566, 570. As between the plaintiff and the corporation (which had no duty to recognize the plaintiff as one having the present right of possession of the shares, as distinguished from the certificate, though he had a present right to become the legal owner), the plaintiff had no such legal right to immediate possession as to enable him to maintain an action for conversion of the shares. *Barrett* v. *King,* 181 Mass. 476. *McCoy* v. *American Express Co.* 253 N. Y. 477, 481–486. *Maryland Casualty Co.* v. *Hollman,* 100 Cal. App. 669, 673. *Fulton* v. *Fulton,* 48 Barb. S. C. 581, 589.

*Order dismissing report affirmed.*