# Richmond.

## Reaves Warehouse Corporation v. James S. Easley.

March 22, 1928.

Absent, Burks, J.

1. Stock and Stockholders—*Pledge and Collateral Security—Right to Dividends as between Pledgee and Owner.*—The owner of stock has a right, as against a person who holds the stock as collateral security, in the absence of agreement to the contrary, to receive all dividends which are declared out of the current earnings of the corporation.

2. Stock and Stockholders—*Pledge and Collateral Security—Right to Dividends as between Pledgee and Owner—Liquidation Dividend.*—But where the stock has been assigned to a third party as security for the payment of a debt, and the corporation goes into liquidation, the owner of the stock is not entitled, as against his assignee, to receive a check which is given in distribution of the capital assets of the company. The assignee of the stock so pledged is entitled to receive all such distribution checks until his debt is paid in full.

3. Stock and Stockholders—*Pledge and Collateral Security—Right to Dividends as between Pledgee and Owner—Liquidation Dividend—Case at Bar.*—The owner of stock in a warehouse corporation, which was in process of liquidation, who was one of the principal incorporators of a new company, assigned his stock in the warehouse corporation as collateral security for a note of the new company on which he was endorser and which he had agreed to be bound for the payment as fully as if he were one of the makers thereof. The liquidating committee of the warehouse corporation paid the first two dividends in distribution of capital assets to the pledgee of the stock and this method was acquiesced in by all parties. But the third dividend check was mailed direct to the owner of the stock and he, in violation of his promise, endorsed and delivered the check in payment of an attorney's fee. The bank refused to pay the check and the liquidating committee corrected its error and paid the amount of the check to the pledgee, which applied it as a credit on the amount due it.

*Held:* That the endorsement of the check by the owner of the stock and its delivery by him to his attorney did not vest in the attorney title to any part of the money which was in the bank to the credit of the warehouse company, as the shares of the owner had been transferred to the pledgee to secure the payment of the amount borrowed from it.

4. Bills, Notes and Checks—*Check as an Assignment—Right to Liqui-dation Dividends as between Pledgee of Stock and Pledgor—Case at Bar.*—In the instant case stock in a corporation was pledged by the owner as collateral security for a note on which he was an endorser and which he agreed to be bound for the payment as fully as if he were the maker of the note. The corporation was in liquidation and through error a liquidation check was sent to the owner of the stock instead of the pledgee, and, in violation of his promise, he endorsed and delivered the check to his attorney in payment of an attorney's fee. The bank refused to pay the check.

*Held:* That there was no agreement or contract between the attorney and the bank by which he could hold the bank, and under section 5751 of the Code of 1919, providing that a check does not operate as an assignment, the bank was not liable to the attorney.

5. Stock and Stockholders—*Pledge and Collateral Security—Right to Dividends as between Pledgee and Owner—Liquidation Dividend—Case at Bar.*—The owner of stock in a warehouse corporation, which was in process of liquidation, who was one of the principal incorporators of a new company, assigned his stock in the warehouse corporation as collateral security for a note of the new company on which he was endorser and which he had agreed to be bound for the payment as fully as if he were one of the makers thereof. The liquidating committee of the warehouse corporation paid the first two dividends in distribution of capital assets to the pledgee of the stock and this method was acquiesced in by all parties. But the third dividend check was mailed direct to the owner of the stock and he, in viola-tion of his promise, endorsed and delivered the check in payment of an attorney's fee. The bank refused to pay the check and the liqui-dating committee corrected its error and paid the amount of the check to the pledgee, which applied it as a credit on the amount due it.

*Held:* That the new company was not a party to the check, and had not entered into any contract with the attorney, and the bank having refused to pay the check, and the attorney, not having acquired title to any funds in the bank, could not say that the money which the pledgee received in payment of the check belonged to him.

6. Stock and Stockholders—*Pledge and Collateral Security—Right to Dividends as between Pledgee and Owner—Liquidation Dividend—Case at Bar.*—The owner of stock in a warehouse corporation, which was in process of liquidation, who was one of the principal incorporators

of a new company, assigned his stock in the warehouse corporation as collateral security for a note of the new company on which he was endorser and which he had agreed to be bound for the payment as fully as if he were one of the makers thereof. The liquidating committee of the warehouse corporation paid the first two dividends in distribution of capital assets to the pledgee of the stock and this method was acquiesced in by all parties. But the third dividend check was mailed direct to the owner of the stock and he, in violation of his promise, endorsed and delivered the check in payment of an attorney's fee. The bank refused to pay the check and the liquidating committee corrected its error and paid the amount of the check to the pledgee, which applied it as a credit on the amount due it.

*Held:* That the new corporation not having received any money which was the property of the attorney, it could not be said that the attorney had been compelled to pay a debt which the new company was bound for as principal, and there could be no recovery by the attorney against the new corporation for money had and received.

7. STOCK AND STOCKHOLDERS—*Pledge and Collateral Security—Right to Dividends as between Pledgee and Owner—Liquidation Dividend—Case at Bar.*—Under the terms of a written agreement an owner of stock in a corporation in the process of liquidation pledged as collateral security for a note given by a new corporation in which he was one of the principal incorporators, was bound as maker of the note, and when a liquidation check for $315.00 was applied as a credit upon the note, it was a payment *pro tanto* of an obligation for which the owner of the stock was bound as principal. Besides, it was agreed by the owner of the stock, the pledgee of the stock, and the liquidation committee of the corporation that the capital dividends declared upon the stock should be paid to the pledgee on the note given for the money borrowed. The owner of the stock received by error the liquidation check, and, in violation of his promise to turn it over to the pledgee, endorsed it to his attorney in payment of an attorney's fee. The bank refused to pay the check to the attorney and the liquidation committee corrected its error and paid the amount of the dividend to the pledgee. The instant case was an action by the attorney against the new corporation for the $315.00. ·

*Held:* That the burden was on the attorney to prove by a preponderance of the evidence that the new corporation was indebted to him, which burden he failed to carry.

Error to a judgment of the Circuit Court of Halifax county, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Malcolm K. Harris,* for the plaintiff in error.

*M. B. Booker* and *Geo. E. Booker, 3rd,* for the defendant in error.

WEST, J., delivered the opinion of the court.

In an action by notice of motion, brought by James S. Easley against Reaves Warehouse Corporation, a judgment was entered against the defendant for $315.00 to which this writ of error was allowed. Among the material facts are these:

Independent Warehouse Company, a corporation located at South Boston, Virginia, was engaged in selling leaf tobacco. There was a lack of co-operation among the stockholders and they agreed to place the company in liquidation. W. S. Nichols and D. T. Lacy, Jr., two of the largest stockholders, were appointed a liquidating committee, which was authorized to sell the warehouse building and other property of the company, pay its obligations and distribute the net assets among those entitled to receive the same. D. T. Reaves was also a stockholder in the corporation.

At a sale by public auction, Reaves and Nichols became the purchasers of the warehouse at a cash bid of $85,200.00. They executed a deed of trust on the property upon which they borrowed from the Virginia Trust Company $50,000.00, which was applied in part payment of the purchase price.

Reaves and Nichols then secured a charter for the Reaves Warehouse Corporation and deeded the warehouse property to it, subject to the deed of trust in favor of the Trust Company. Reaves and Nichols

owned all the stock in the new corporation except five shares which were owned by a third party.

The Reaves Warehouse Corporation executed a deed of trust upon the property to secure the payment of the sum of $32,800.00, represented by two notes of $16,400.00 each, which were signed by Reeves Warehouse Corporation and endorsed by it and by W. S. Nichols and D. T. Reaves. These notes were discounted, one by the Boston National Bank and the other by Planters and Merchants National Bank, both of South Boston, Virginia.

At the time the money was borrowed on these notes, there was delivered to the banks as collateral security stock of the Independent Warehouse Company, owned by Nichols and Reaves, of the par value of $25,125.00, then in liquidation; $30,500.00 of the capital stock of the Reaves Warehouse Corporation; and $7,600.00 of the capital stock of the Nichols Lumber Company.

In addition, Nichols and Reaves entered into a written agreement with the banks, to which the Reaves Warehouse Corporation was not a party, in which they not only guaranteed the payment of the notes, but also agreed that they should be "bound for the payment of said notes as fully and to the same extent as they would be bound were they makers thereof."

The liquidating committee thereafter paid several liquidation dividends upon the stock of the Independent Warehouse Company. The checks for the first two dividends in distribution of capital assets, upon shares of stock of the old company listed in the names of Nichols and Reaves, were delivered to the two banks and this method of handling the matter was acquiesced in by all parties. Through error, the third dividend checks were mailed direct to Nichols and Reaves. Reaves delivered his check for $315.00 to the Planters

and Merchants National Bank, and Nichols promised to deliver his check, for the same amount, to the bank, but, in violation of that promise, endorsed the check and delivered it to James S. Easley in payment of an attorney's fee which he owed him. Nichols informed Easley that some question might be raised as to his (Nichols') right to the check, but if he would present it to the bank it would be paid.

The bank refused to pay the check and the liquidating committee corrected its error and paid the $315.00 over to the Planters and Merchants National Bank, which applied it, as other payments of capital assets had been applied, as a credit on the amount due the bank for money borrowed, for which this stock in the Independent Company was pledged as collateral.

A trial by jury was waived and all matters of law and fact were submitted to the court. Upon the hearing, the court entered the judgment complained of.

The only assignment of error is the action of the court in entering the judgment for the plaintiff.

[1, 2] The check in controversy was signed by Independent Warehouse Company and payable to W. S. Nichols, for $315.00. It was not a dividend check given in payment of the stockholder's share of the current earnings of a corporation which was a going concern. The owner of stock has a right, as against a person who holds the stock as collateral security, in the absence of agreement to the contrary, to receive all dividends which are declared out of the current earnings of the corporation. But, where the stock has been assigned to a third party as security for the payment of a debt, and the corporation goes into liquidation, the owner of the stock is not entitled, as against his assignee, to receive a check which is given in distribution of the capital assets of the company. The assignee

of the stock so pledged is entitled to receive all such distribution checks until his debt is paid in full.

[3] The endorsement of the check by Nichols and its delivery by him to Easley did not vest in Easley title to any part of the money which was in bank to the credit of the Independent Warehouse Company. The shares of Reaves and Nichols in this money had already been transferred to the banks to secure the payment of the amount borrowed from them.

[4] Code of Virginia, section 5751, provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless it accepts or certifies the check."

The bank, in the instant case, refused to pay the check, and there was no agreement or contract between Easley and the bank by which he could hold the bank liable to him.

[5] Reaves Warehouse Corporation was not a party to the check, and had not entered into any contract with Easley. The bank having refused to pay the check, and Easley, not having acquired title to any funds in the bank, cannot say that the money which the bank received in payment of the check belonged to him.

[6] The Reaves Warehouse Corporation not having received any money which was the property of Easley, it cannot be said that he has been compelled to pay a debt which Reaves Warehouse Corporation was bound for as principal, and there can be no recovery by him against the corporation, for money had and received.

[7] Under the terms of the written agreement, *supra*, Nichols was bound as maker of the notes held by the banks, and when the $315.00 was applied as a credit upon one of those notes, it was a payment *pro tanto* of

an obligation for which Nichols was bound as principal. Besides, it was agreed by and among Nichols, Reaves, the banks and D. T. Lacy, Jr., of the liquidation committee, that the capital dividends declared upon the stock listed in the names of Nichols and Reaves should be paid to the banks on the notes given for the money borrowed. (D. T. Lacy, Jr., was cashier of the Boston National Bank and the active member of the liquidation committee.)

The burden was on Easley to prove by a preponderance of the evidence that Reaves Warehouse Corporation was indebted to him in the sum sued for. He has failed to carry this burden.

The judgment will be reversed and final judgment entered here for the defendant.

*Reversed.*