C. HANDASYDE WHITNEY & others *vs.* M. ALICE NOLAN.

Suffolk. December 7, 1936. — January 25, 1937.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Stockbroker. Corporation,* Transfer of stock, Dividend. *Pledge.*

The deposit, by a customer with a stockbroker with whom he had a margin account, of an unindorsed certificate of stock to be "kept" for him, acceptance of a receipt stating rights of the stockbroker as to the stock, which were the usual rights respecting collateral security

for a margin account, and of confirmation sheets of purchases and sales on the account setting forth similar rights of the stockbroker, and the nature of monthly statements given to and accepted by the customer without objection, warranted a finding that the customer knew that the stock certificate was held by the stockbroker as collateral security for his margin account and not merely for safekeeping.

A stockbroker, to whom a certificate of stock was delivered by a customer who intended to transfer it as security for a margin account but failed to indorse the certificate, thereby was given rights as an equitable pledgee of the stock and was entitled in equity to indorsement of the certificate by the customer and also to indorsement and delivery of a certificate of stock issued to the customer as a stock dividend thereon after the delivery thereof.

BILL IN EQUITY, filed in the Superior Court on February 4, 1930.

The suit was heard by *Burns*, J. The defendant appealed from decrees entered by his order.

*H. Finn*, for the defendant, submitted a brief.

*M. Jenckes*, for the plaintiffs.

PIERCE, J. This is a suit in equity. It is before this court on an appeal by the defendant from an interlocutory decree of the Superior Court confirming the master's report and overruling the defendant's objections thereto, and from the final decree of said court determining the defendant's indebtedness to the plaintiffs, requiring the indorsement by the defendant of certain stock certificates held by the plaintiffs, providing for the sale and crediting of the proceeds thereof, requiring the defendant to indorse and deliver to the plaintiffs certain shares of stock received by her as a stock dividend upon the shares of Coca Cola stock held by the plaintiffs, requiring the plaintiffs to sell said Coca Cola stock and credit the defendant with the proceeds thereof, providing for the issuance of execution, and dismissing the defendant's answer in the nature of a cross bill.

The master's report discloses in substance the following facts: The plaintiffs for many years have been engaged in business as stockbrokers at Boston, Massachusetts, under the name of Whitney and Elwell. In February, 1929, the defendant came to the office of the plaintiffs and had a talk with one Luce, employed by the plaintiffs as a "cus-

tomer's man," with reference to opening a margin account. The defendant did not deal with anyone else at Whitney and Elwell's until her account was closed out, except on one occasion when she brought in some securities and left them with one of the cashiers. Luce agreed with the defendant that she could open a margin account if she brought in some collateral as margin. On February 8, 1929, she brought in certificates for five common stocks and gave orders for the purchase of certain stocks. At no time did she put up any money as margin. On February 11, 1929, she ordered the purchase of further stock and was told she must deposit more margin if she wished to do further trading, and she promised to do so. The stock was purchased for her account as ordered, and thereafter, on February 21, 1929, the defendant brought into the plaintiffs' office unindorsed certificates of stock and delivered them to the assistant cashier, with the statement that they were to be kept for her. Two employees of the plaintiffs, the stock clerk and the man who took them in, knew at some time that the certificates were unindorsed. Upon delivering the certificates to the assistant cashier a receipt marked "Not endorsed" was given the defendant. On the bottom of the receipt the following statement was printed: "In accordance with the usual custom we reserve the right to transfer, sell, pledge or use the above or any stocks in any way without further notice." Occasionally, but not often, stocks were delivered to Whitney and Elwell by a customer for safe keeping. On those occasions the same form of receipt would be used, but the word "safekeeping" would be written on the receipt. The defendant at no time objected to this form of receipt. When Luce learned the certificates were not indorsed he requested the defendant to come in, and, in his absence, she came in and indorsed some of them, but there were others which were not indorsed. Luce and others in the plaintiffs' office supposed that all the certificates were indorsed and on that basis treated them as margin for the defendant's account.

From February 8, 1929, to October 15, 1929, the plaintiffs made a great many purchases and sales for the de-

fendant. Whenever stocks were bought or sold for the defendant she received by mail a confirmation sheet on the bottom of which was printed: "(c) That any and all securities held by us on the account of the customer, either alone or with other securities and up to and for more than the amounts for which said securities are held by us may be pledged, repledged or loaned, with unlimited power to repledge, to other customers of ours or their agents or to other brokers, and securities so pledged, repledged or loaned are considered within our control." "(e) That without call or notice to the customer we may close out the whole or any part of the customer's open account at public or private sale by buying or selling from or to ourselves or others."

Each month the defendant received a statement of her account showing the transactions of the previous month, and showing the stocks which were being carried in her account. Those stocks included the stocks brought in on February 21, unless previously sold as hereinafter set forth. The defendant never objected to those stocks being carried in her account. After February 21, 1929, the plaintiffs from time to time sold upon the defendant's order some of the defendant's stocks represented by unindorsed certificates, and credited the proceeds, without objection by the defendant, on her margin account. The plaintiffs completed such sales by delivering to the buyers other stock in the hands of the plaintiffs. The plaintiffs did not discover until after the closing out of the defendant's account that the various certificates were unindorsed.

On October 29 and October 30, 1929, the defendant's account being undermargined and she having stated her inability to furnish more margin, the plaintiffs sold out her securities. As to the unindorsed certificates which they still held, the plaintiffs, being unable to make delivery upon sales of those stocks, purchased other stock on their own stock account, or otherwise, and charged the defendant's account.

The master found, so far as it was a question of fact, that the shares of unindorsed stock now in the hands of

the plaintiffs "were deposited with the plaintiffs by the defendant and held by them with her knowledge and consent as collateral or margin for her margin account," and that the plaintiffs before bringing this suit requested the defendant to indorse the certificates but she declined to do so.

This suit in equity was brought on February 4, 1930. Since the bringing of this suit the defendant has received cash dividends upon the unindorsed certificates amounting to $286.30, and on December 10, 1935, received a three hundred per cent stock dividend from the Coca Cola Company; that is, a stock dividend of nine shares of Coca Cola Company stock upon three shares of Coca Cola Company stock represented by an unindorsed certificate held by the plaintiffs. On April 4, 1936, the plaintiffs made an unsuccessful demand on the defendant to turn over the stock dividend. The master found that the indebtedness of the defendant to the plaintiffs, including interest, was $4,858.61.

The defendant's first objection to the master's report relates to his finding that Luce and others in the plaintiffs' office supposed that all the certificates deposited by the defendant had been indorsed by her. The defendant contends that such a finding is inconsistent with the finding that two of the plaintiffs' employees knew at some time that the certificates were unindorsed. That was all that was found with reference to any knowledge of employees of the plaintiffs that the certificates were unindorsed. These findings cannot be said to be inconsistent and contradictory upon a material issue.

The defendant's second objection is to a finding of the master setting forth the plaintiffs' practice in making delivery of certificates after sales of stock. That finding was merely descriptive of the probable course of the plaintiffs' business in a purely suppositional case, and must have been so considered by the master and the judge. The evidence is not reported, and it cannot be fairly said that the illustration was not warranted on the evidence.

The defendant's third objection is similar to her first

objection and fails for the same reason. The defendant's remaining objections to the master's report likewise cannot be sustained for the reason that, the evidence not being reported, it cannot be said that the findings covered by those objections are clearly inconsistent and contradictory. It follows, therefore, that the report of the master was confirmed rightly.

Respecting the defendant's appeal from the final decree, the findings of the master were to the effect that the unindorsed certificates of stock delivered by the defendant on February 21, 1929, were delivered as collateral security for her margin account. The final decree, as has already been set forth, ordered the defendant to indorse various certificates of stock now held by the plaintiffs, and also to indorse and deliver to the plaintiffs the nine shares of Coca Cola Company stock received by the defendant as a stock dividend upon the three shares of the stock of the same company held by the plaintiffs.

In the case at bar, in the absence of a finding that the stock involved is that of corporations organized under the laws of this Commonwealth or of another State whose laws are consistent with the uniform stock transfer act (G. L. [Ter. Ed.] c. 155, §§ 24–46), that act is not here applicable. *Casto* v. *Wrenn*, 255 Mass. 72, 75. As to the transaction with reference to the unindorsed stock deposited by the defendant with the plaintiffs, it may be inferred, from the master's findings, that the intent of the parties was that that stock was to be used as collateral security for the defendant's margin account. The question, therefore, arises as to the effect of that transfer in the circumstances here appearing. Where the owner of stock, intending to make an absolute transfer, for lack of indorsement or because of some other defect in the mode of transfer, fails to transfer the legal title, it is held that by the transfer the equitable title goes over to the transferee. *Sargent* v. *Essex Marine Railway*, 9 Pick. 202, 204. *Herbert* v. *Simson*, 220 Mass. 480, 481, 483. The same result is reached under the uniform stock transfer act (G. L. [Ter. Ed.] c. 155, §§ 24–46), even though the provisions of that act relative to trans-

fers are not complied with, and though the act purports to state the only method of transfer (§ 27; *Edgerly* v. *First National Bank of Boston,* 292 Mass. 181, 185), on the grounds that the requirements of the act do not apply to transfers of an equitable title. *Stuart* v. *Sargent,* 283 Mass. 536, 542. In such circumstances, also, the equitable owner, in the absence of a contrary intent, is entitled to dividends declared after the transfer of the equitable rights. Compare *Nesmith* v. *Washington Bank,* 6 Pick. 324, 329; *Stuart* v. *Sargent,* 283 Mass. 536, 540-542.

So, where the intent of the parties was to effectuate a transfer of stock as security for a margin account, if, for lack of indorsement, the full rights intended to be transferred do not pass, rights in the nature of an equitable mortgage, together with the right to require an indorsement, are transferred. *Nesmith* v. *Washington Bank,* 6 Pick. 324, 328. *Boston Safe Deposit & Trust Co.* v. *Adams,* 224 Mass. 442, 444. *Leonard* v. *Boston Five Cents Savings Bank,* 278 Mass. 36, 43. *Good Fellows Associates, Inc.* v. *Silverman,* 283 Mass. 173, 180. In the case at bar no rights of creditors or third parties are involved.

Under the above discussed principles, the plaintiffs are entitled to the indorsement of the unindorsed certificates delivered by the defendant to them. They are also entitled to dividends declared after the passage of the equitable rights to them if they would have been so entitled had the formal requirements to effectuate the intended transfer been complied with. Whatever may be the law in this Commonwealth as to the rights of a pledgee of stock to cash dividends, declared on stock held under the pledge (see *Union Trust Co.* v. *Hasseltine,* 200 Mass. 414, 417; but compare *Palmer* v. *O'Bannon Corp.* 253 Mass. 8, 18), it is clear that the plaintiffs were entitled to the stock dividend here involved. To allow one in the position of the defendant in the case at bar to retain the stock dividend in the circumstances here disclosed is to allow the pledgor, in effect, to depreciate the security which she delivered to the plaintiffs. *Whetsel* v. *Forgey,* 323 Mo. 681, 694. *Peoples-Pittsburgh Trust Co.* v. *Saupp,* 320 Penn. St. 138,

143, 145. Compare *Reaves Warehouse Corp.* v. *Easley,* 150 Va. 236, 241, 242. It follows, therefore, that the decree in the case at bar was correct, not only in ordering the defendant to indorse the certificates which she had delivered to the plaintiffs, but also in ordering her to indorse and deliver the certificate representing the stock dividend which she had received from the Coca Cola Company.

*Interlocutory decree affirmed.*

*Final decree affirmed with costs.*