### David W. Nadien vs. Arthur A. Bazata.

Hampden. October 25, 1938. — July 7, 1939.

Present: Field, C.J., Donahue, Lummus, Qua, & Dolan, JJ.

*Real or Personal Property. Estoppel. Fixture. Landlord and Tenant, Fixtures.*

Conduct of a landlord in encouraging a prospective purchase from a tenant of a business of conducting a bowling alley in a belief that the alleys were personal property of the tenant estopped him to deny that they were such and to assert a title to them as abandoned trade fixtures of a former tenant.

Bill in equity, filed in the Superior Court on June 29, 1937, and afterwards amended.

The case was heard by *Burns,* J., and a final decree dismissing the bill entered pursuant to his order. The plaintiff appealed.

The case was submitted on briefs.

*L. J. Deitz,* for the plaintiff.

*P. E. Granfield & E. S. Searle,* for the defendant.

Lummus, J. A landlord brings this bill to restrain his tenant from removing six bowling alleys and racks from the tenement on the fifth floor of the plaintiff's building in Westfield.

A master found the facts. The building has brick outside walls, but the interior is of wood. There are five floors above the basement, reached by stairs and elevators. When the bowling alleys were installed in 1908, no change in the floor, plastering or windows was made, but the radiators were raised to the level of the alleys. The alleys

were built up on the floor, of tar paper, a "cork carpet," wooden blocks, wooden stringers, wooden sleepers, and wooden alleys or "bowling beds." The structure was fastened together with nails and screws, and many of the blocks were nailed to the floor with eightpenny nails. The height of the alleys from the floor to the upper surface was about fourteen inches. The spaces in the structure were filled with cinders, to deaden the sound. The approach or platform used by bowlers was of wood, built up from the floor to the level of the alleys. Its supporting timbers were nailed or spiked to the floor. The weight of one bowling alley fully installed was about three thousand pounds. At the ends of the alleys a backboard was spiked to the wall, to protect the windows from flying pins and balls. The racks for balls were attached to the alleys. All could be removed, and any imperfections in floor and plaster repaired, without substantial damage to the building.

To make a long story short, the alleys and racks were installed as tenant's fixtures by a tenant of a former owner of the building, and the right to remove them legally had been lost. The plaintiff became the owner of the building in 1930, at a time when one Doherty, who was not the original tenant, conducted the bowling alley business as a tenant at will. No question had ever arisen as to the ownership of the alleys and racks.

The circumstances of the sale from Doherty to the defendant were as follows. Doherty was ill, and the defendant, who had been working for him, wished to buy the business. The plaintiff undertook to help the defendant in buying the business at a price of $850, and the defendant paid the plaintiff $200 for his assistance. The defendant believed that if he should buy the business he would obtain title to the bowling alleys and racks as personal property, and the plaintiff, knowing of the defendant's belief, encouraged him to make his offer and to act on that belief, and at no time informed him of any adverse claim and never made any demand upon Doherty for the alleys or racks, or said that he claimed them as a part of the realty. On August 1, 1931, Doherty gave the defendant a bill of sale

of the "bowling alleys, and equipment, pool tables and equipment, and all other personal property belonging to me and used in my business . . ." Three months later, on November 1, 1931, the plaintiff, in execution of an oral agreement made before the defendant bought the business, gave the defendant a lease of the premises for five years, to be used as bowling alleys and billiard rooms. The only provisions that might be thought to bear upon the case are the following: "All additions, fixtures, and improvements made or placed by the tenant to or upon said premises shall immediately become and be the property of the landlord and shall remain upon and be surrendered with the premises as a part thereof at the expiration of said term, by lapse of time or otherwise . . ."; "all personal property in said leased premises shall be at the risk of the tenant only . . ."; and "the tenant agrees, that at the termination of this lease, he will return the said premises to the landlord in the same condition as the premises were in at the commencement of this lease, together with all improvements, additions and alterations made thereon . . ." Ever since 1931 the bowling alleys have been assessed to the defendant as personal property, and he has paid the taxes on them.

The master found as conclusions of fact (1) that the defendant acquired title to the bowling alleys and racks "as trade fixtures" and (2) that the plaintiff was estopped to assert against the defendant title to them as part of the realty. But he found that after the lease expired on November 1, 1936, the defendant remained in possession under a new tenancy at will, and thereby lost his right to remove the bowling alleys and racks.

The judge sustained exceptions of the defendant to the findings that the alleys became trade fixtures and that after November 1, 1936, the defendant lost title to them; confirmed the master's report as modified by the sustaining of those exceptions; and decided "that the bowling alleys and racks are the property of the defendant." From a final decree dismissing the bill without costs, the plaintiff appealed.

The bowling alleys and racks in their nature could be pure chattels, instead of either trade fixtures (*Looney* v. *Trimount Theatres, Inc.* 282 Mass. 275, 277) or irremovable parts of the realty. Articles fully as ponderous, as firmly attached, and as difficult to remove, and indeed complete buildings, may retain the character of pure chattels, if such is the intention. *Stone* v. *Livingston*, 222 Mass. 192. *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349. *Hannah* v. *Frawley*, 285 Mass. 28. *Titcomb* v. *Carroll*, 287 Mass. 131. *Grinnell Co. Inc.* v. *Gardner Trust Co.* 288 Mass. 385. *Mathey* v. *Charlestown Five Cents Savings Bank*, 290 Mass. 510. *Standard Plumbing Supply Co.* v. *Gulesian*, 297 Mass. 214. Nothing in the lease from the plaintiff to the defendant is inconsistent with the finding, which we think is the proper finding upon the subsidiary findings reported, that the alleys and racks are personalty. They were not installed by the defendant under the lease. The conduct of the plaintiff estops him to deny that the alleys and racks are mere chattels, the property of the defendant. *Looney* v. *Trimount Theatres, Inc.* 282 Mass. 275. The fact that under our interpretation of the subsidiary findings of the master the alleys and racks became by estoppel ordinary chattels and not trade fixtures, takes the case out of the doctrine of *Watriss* v. *First National Bank of Cambridge*, 124 Mass. 571.

*Decree affirmed with costs.*