BETON M. KANEB *vs.* KENNETH A. KANEB & others.

Suffolk.    February 8, 1956. — September 12, 1956.

Present: RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Estoppel. Corporation*, Ownership of stock.

The oldest of three brothers who formed a business corporation which originally issued three stock certificates numbered one, two, and three, each for one third of its shares, was estopped to claim ownership of certificate numbered three where it appeared that when the corporation was formed the brothers agreed that each should own one third of its stock, that certificate numbered one was issued to the

oldest brother and certificate numbered two to the second brother, that certificate numbered three, made out to an attorney and endorsed in blank, was delivered to the oldest brother at his request and withheld by him from the third brother, that the oldest brother paid nothing for that certificate, that he misled the third brother into believing that he was holding it for the third brother and later misled both his brothers by claims that that certificate represented treasury stock, and that subsequently an unnumbered certificate for a third of the shares dated back to the time of the original issue and signed by the oldest brother as treasurer and the second brother as president was issued to the third brother upon his paying the same amount as had the others for their shares respectively.

BILL IN EQUITY, filed in the Superior Court on June 15, 1953.

The suit was heard by *Rome, J.,* on a master's report.

*J. Newton Esdaile, Walter H. Morris,* & *John S. McKenney,* for the plaintiff, submitted a brief.

*Richard Wait,* (*Andrew C. Bailey* & *John C. Kane* with him,) for the defendants.

RONAN, J. These are two appeals taken by Beton M. Kaneb in a proceeding to determine his ownership of thirty-three shares of the common stock of Union Oil Company of Boston as represented by a certificate numbered 3. The first appeal is from an interlocutory decree confirming a master's report which concluded he did not own this stock but that the defendant Kenneth A. Kaneb, his brother, was the owner of thirty-three shares, as shown by an unnumbered certificate issued subsequently to certificate numbered 3. The second appeal is from a final decree ordering the cancellation of this last mentioned certificate.

The plaintiff filed forty-nine objections to the master's report. Most of them were to the failure of the master to make further findings of fact; some because, as alleged, his findings were wrong, others because not supported by the evidence, and a few because inconsistent with each other. There was no inconsistency and there was no error in overruling the exceptions to these alleged inconsistent findings. None of the other exceptions has been argued specifically but the plaintiff bundles them together leaving the court to discover if there is a broken stick somewhere in the faggot.

A party not having sufficient confidence in his exceptions to argue them can hardly expect a court to do his work. *Boston* v. *Dolan*, 298 Mass. 346, 355–356. *Commonwealth* v. *Gale*, 317 Mass. 274, 277. Nevertheless, we have examined these exceptions and perceive nothing sufficient to sustain any of them.

The facts appear from the master's report. The individuals here named are brothers. Beton, the eldest, embarked in the oil business in 1930. This business was incorporated in 1934 under the name of the Central Oil Co. of Worcester, hereinafter referred to as Central. In that year, Kenneth had graduated from college and George was a student in a medical college. Subsequently, George practised medicine in Worcester until December, 1948, when he ceased his practice to become a full time associate of Beton. The Central business was a success. Beton began to urge his brothers to secure a deep water terminal in or around Boston. They first demurred, but finally agreed that they should secure such a terminal; that a corporation should be organized to take title; and that each of them should have a one third interest in the corporation. Union Oil Products Company of Boston was organized on July 16, 1945. Its corporate name was changed to Union Oil Company of Boston, hereinafter referred to as Union, in September, 1948. Beton, Kenneth, and their attorney Mr. McCabe came to Boston to form the corporation. A certificate for thirty-three shares was made out to Beton, a second certificate for thirty-three shares to George, and a third certificate to Mr. McCabe who at the request of Beton indorsed it in blank and delivered it to Beton. Kenneth protested vigorously when he learned that no certificate was then to be delivered to him. Beton assured him that certificate numbered 3 was being held for him and that it would soon be transferred to him. The articles of association were changed to show that Kenneth subscribed for no shares. The three certificates were taken to Worcester where George added his signature as president. Certificates numbered 1 and 3 were taken by Beton. He took certificate numbered 3 with the under-

standing among the brothers that he was holding it until such time as he and George should decide Kenneth should receive it. Beton and George had agreed that Kenneth should not be given his certificate until he should become a father, as they did not want Kenneth's wife to get all of Kenneth's interest in the oil and other companies in which he had an interest with them in case he should die childless. Both Beton and George had also agreed to withhold Kenneth's certificate for a time in order to spur him on to take a more active part in his work.

The records of Union were kept in an incomplete and haphazard manner. Accountants were hired in the latter part of 1946 to set up the corporate records for Union. Meetings of stockholders and directors were frequently held, wherever or whenever the brothers happened to meet. The accountants had to rely upon the statements of different officers to fill in the records. They inquired of Beton concerning certificate numbered 3 and he informed them that it had become treasury stock for which he had paid $13,200. The accountants accordingly charged him with $26,400 for certificates numbered 1 and 3 and then credited him with $13,200 for certificate numbered 3 for the purchase of this certificate by Union. The master properly charged Kenneth and George with constructive knowledge of these entries. It therefore appeared from the record that Beton was the holder of certificate numbered 1 for thirty-three shares for which he paid $13,200, and that he held no other shares. The record showed that George held certificate numbered 2 for the same number of shares as Beton, for which he paid the same amount, and in the same manner.

Friction developed between Beton and Kenneth in 1948. Beton refused to continue to be associated with Kenneth unless he signed a general release running to Beton and George. Kenneth signed such a release on December 21, 1948. Kenneth, however, kept importuning Beton for his certificate from July, 1945, until he obtained a certificate early in 1949. A certificate for thirty-three shares of Union Oil Products Company of Boston running to Kenneth, dated

July 16, 1945, signed by Beton as treasurer and George as president was issued on January 5, 1949. He paid the same amount as did his brothers for certificates numbered 1 and 2 respectively. That certificate is still held by Kenneth.

We need not decide what effect the statute G. L. (Ter. Ed.) c. 155, § 27, had upon any interest of Kenneth in certificate numbered 3, which, after being indorsed in blank, was delivered by Mr. McCabe to Beton, see *Stuart* v. *Sargent*, 283 Mass. 536, 541–542; *Whitney* v. *Nolan*, 296 Mass. 419, 425, nor need we decide the effect on such interests by the general release given on December 21, 1948, for Kenneth's rights in his present certificate may be sustained on other grounds and Beton's lack of ownership may be predicated on estoppel.

Beton contends that he took certificate numbered 3 free and clear from Mr. McCabe by virtue of G. L. (Ter. Ed.) c. 155, § 27, and furthermore, if Kenneth had any equitable claim to certificate numbered 3 it was released by the delivery of the general release. We need not decide either question for it is plain from the master's report that Kenneth was first misled by Beton when the latter withheld the certificate numbered 3 on July 16, 1945, into believing that he was holding it for the benefit of Kenneth, and both Kenneth and George were misled by the claims of Beton that the stock represented by certificate numbered 3 was treasury stock. It was not until 1952 that Beton signed his name above Mr. McCabe's indorsement and began to claim that he was the owner of the thirty-three shares represented by certificate numbered 3. The only agreement they ever had as to the division of the stock was that each should own one third. It was never intended that Beton should own stock represented by certificate numbered 3. Beton did not pay anything for this certificate. Beton is estopped to claim ownership in it. *Snow* v. *Hutchins*, 160 Mass. 111, 117. *United Shoe Machinery Co.* v. *Bresnahan Shoe Machinery Co.* 197 Mass. 206, 215. *J. H. Gerlach Co. Inc.* v. *Noyes*, 241 Mass. 69, 73–74. *Looney* v. *Trimount Theatres, Inc.*

282 Mass. 275. *Nadien* v. *Bazata,* 303 Mass. 496, 499. *Vincent* v. *Plecker,* 319 Mass. 560, 561. *Elm Farm Foods Co.* v. *Cifrino,* 328 Mass. 549, 557.

The old certificate originally intended for Kenneth never was turned over to the corporation. The surrender of the stock is for the protection of the corporation before a new certificate is issued in exchange therefor. There was little danger of this occurring here when the only stockholders had agreed that each should hold one third of the capital stock and especially where the signatures of two of them were necessary for the issuance of a new certificate.

The interlocutory and final decrees were right and must be affirmed.

*So ordered.*