144 So.2d 12

**Hays JOHNSON et al.**

v.

**W. P. JOHNSON.**

6 Div. 725.

Supreme Court of Alabama.

June 14, 1962.

Rehearing Denied Aug. 30, 1962.

John Self, Hamilton, for appellants.

Rankin Fite and Bill Fite, Hamilton, for appellee.

SIMPSON, Justice.

This is an appeal from a final decree in equity granting relief to the complainant, appellee here. Appellee has filed a motion to strike the transcript and dismiss the appeal.

On Motion to Dismiss.

■ The decree was rendered December 29, 1960. Appellants on January 9, 1961 requested the court to fix and allow a supersedeas bond. This request was granted and on the same day supersedeas bond and bond for cost were given and approved and notice and citation of appeal were filed. Appellants duly requested a transcript of the testimony and seasonably thereafter applied to the trial judge for an extension of time for filing the transcript, which was granted. The transcript was filed in this court April 6, 1961. Appellee argues that since appellant did not comply with the last sentence of Rule 37, the transcript was not filed within the sixty days fixed by the rule. The last sentence of the rule reads: "A copy of any order of trial judge extending the time for filing transcript shall be filed by appellant in this court within five days from the date of such order". Whatever might be said of the reason for the quoted requirement, it has no application to this case, since it could have served no useful purpose. The appeal had not been docketed in this court at the date of the order of the trial court, nor had any application been made to this court for extension of time. The transcript was filed less than sixty days from the date of the extension of time by the trial judge.

■ Appellee further contends that failure of the register to transmit a certificate of appeal to the clerk of this court within twenty days from the filing of security for costs or appeal bond, as required by Rule 38, requires a dismissal of the appeal. As stated above, the transcript was filed in this court April 6, 1961, and the certificate of appeal was attached to and filed with the transcript, which also contained copies

of the bonds executed by appellants. We have held the appeal will not be dismissed for failure of the clerk of the lower court to so send to the clerk of this court the certificate of appeal when the certificate is filed with the transcript. Central of Georgia R. Co. v. Hinson, 262 Ala. 223, 78 So. 2d 286.

The ground of the motion that the court reporter did not certify the transcript of testimony taken in the case, as required by Equity Rule 56, is without merit. The transcript filed here shows such a certificate.

Likewise the ground of the motion alleging a violation of Rule 24, by including the style of the case and other formal matter at the head of each item of pleading, and the name and title of the officer filing the pleading, is without merit. Nor is there merit in the contention that copying into the transcript of certain items directed to be omitted by Rule 25 requires striking of the transcript. While unnecessary, the inclusions of these items worked no burden or inconvenience to appellee or this court, nor materially enlarged or cumbered the transcript. We have refused to dismiss an appeal in such a case. American Federation, etc. v. Dawkins, 268 Ala. 13, 104 So.2d 827.

The motion to strike the transcript and dismiss the appeal is overruled.

### On the Merits.

The bill of complaint in this cause was filed by W. P. Johnson, the sole complainant, against the respondents Hays Johnson, Inez Allgood and Linnie Farned. The parties are brothers and sisters, children of J. C. Johnson and Mrs. J. C. Johnson, both deceased. The bill alleges that complainant and respondents are joint owners and that each owns an undivided one-fourth interest in ten shares of stock in the Marion County Banking Company, and that the same cannot be equitably divided or partitioned among the owners without a sale of the stock. The prayer of the bill is for a sale of the stock and a division of the proceeds among the alleged joint owners. Both parties treat the bill as one authorized by § 186, Title 47 of the Code of 1940, providing that "The circuit court shall have original jurisdiction to divide or partition, or sell for partition, any property, real or personal, held by joint owners or tenants in common * * *." For the purposes of the case as presented, we will so treat the bill.

Briefly, the evidence is that J. C. Johnson, at the time of his death January 3, 1946, was the owner of five shares of the bank stock, which, by reason of a subsequent stock dividend, was increased to the ten shares now involved. The bank records have shown and now show J. C. Johnson as the holder of the stock involved. J. C. Johnson died intestate and in his lifetime made no transfer of his bank stock. A year and six months after death of his father, the complainant W. P. Johnson executed an instrument which, as introduced in evidence by respondents, is as follows:

"June 3, 1947

"TO WHOM IT MAY CONCERN: AND TO MARION COUNTY BANKING COMPANY.

"This is to advise that anything and everything left by Father is for (Mrs. J. C. Johnson) her benefit, then farthermore all I have and all I ever expect to have is free to her disposal.

"Respy
"/S/ W. P. Johnson M.D.
"Witness: D. J. Jones"

On September 12, 1947, the two sisters, Mrs. Allgood and Mrs. Farned, executed these instruments respectively:

"Marion County Banking Company:

"My father, Dr. J. C. Johnson, wished my brother, Dr. R. H. Johnson,

to have his shares of stock in the Marion County Banking Company.

"This is my wish also.

"/s/ Inez Johnson Allgood

"September 12, 1947"

"To Whom It May Concern:

"I wish my brother, Dr. R. Hays Johnson to have the shares of stock left by my father, Dr. J. C. Johnson, Hamilton, Alabama

"/s/ Mrs. Linnie Johnson Farned"

On the same date Mrs. Johnson executed the following instrument:

"Marion County Banking Company

"This is to request that the Bank shares now in Dr. J. C. Johnson's name be transferred to Dr. R. H. Johnson.

"/s/ Mrs. T. C. Johnson

"September 12, 1947"

The widow and mother died August 26, 1957. This suit was instituted September 27, 1960.

The trial court rendered a decree in agreement with the prayer of complainant's bill, finding the parties to the cause to be joint owners of the stock, each owning an undivided one-fourth interest therein, and that the stock be sold. It is from this decree that the respondents have appealed.

At the outset appellants argue that the trial court erred in overruling their demand for a trial by jury. In view of our conclusion upon the merits of the case, it would serve no useful purpose to enter upon a consideration of that question, and we make no decision thereon.

Neither on the trial nor on this appeal has any question been raised as to efficacy of the instruments executed by Mrs. Allgood and Mrs. Farned.

Thus the case boils down to the single question whether W. P. Johnson had any interest in the subject bank stock at the time he commenced this suit. If he did, that interest would be an undivided one-fourth, the other three-fourths interest being vested in Hays Johnson. If W. P. Johnson had no interest, then the entire interest vested in Hays Johnson.

To sustain his claim, appellee takes the position that ownership of the stock remained at all times in J. C. Johnson to whom it was issued and that upon his death it descended to his widow and their four children, and upon the subsequent death of the widow to the four children in equal parts. It is argued by appellee that, in view of § 48, Title 10 of the Code of 1940 (a part of the Uniform Stock Transfer Law) there was never any valid transfer of the subject stock to the widow by the original owner or by appellee and that even so the attempted transfer by the widow to Hays Johnson was in no wise such as the statute requires. In substance § 48 provides that title to a certificate and the shares represented thereby can be transferred only by delivery of the certificate endorsed in blank or to a designated person by the person appearing to be the owner, or by delivery of the certificate together with a separate written document containing an assignment of the certificate.

Appellants answer appellee's contention by advancing two propositions. The first is appellee failed to meet the burden of proving his allegation that he and the respondents are joint owners of the stock which was fatal to his right to a sale for division, citing McMillan v. McMillan, 202 Ala. 322, 80 So. 404, and Hockstein v. Hamilton, 224 Ala. 207, 139 So. 288. The second is, in effect, that Code, Title 10, § 48 is not controlling, but rather that the rule with respect to assignments generally should be applied. Specifically it is argued that though an assignment is not made in conformity to a statute prescribing the mode of making such assignment, yet it may be sufficient to transfer in equity. Planters & Merchants Insurance Co. v. Tunstall, 72 Ala. 142, and Gardner v. Mobile & N. W.

Railroad Co., 102 Ala. 635, 15 So. 271 are cited along with several cases from other states.

As we view the case here presented, the question of transfer of corporate stocks, in the strict or technical sense, is not involved and § 48, Title 10, supra, is without controlling influence. The determinative question is the equitable ownership of, or title to, the stock. Hence, we confine ourselves to the paper executed by the appellee. It is not denied that he executed the paper, but he insists he did not intend to transfer his interest in the stock to his mother and more specifically to his brother. His intent is to be gathered from the words he used in the paper in the light of the situation and the acts of the parties as disclosed by the evidence. Clearly enough, all four of the children, appellee and appellants, were concerned about the well-being of their mother. The father had left no will nor made any property transfers to her. The appellant Hays Johnson had taken the mother into his home where he cared for her. Appellee, as well as his two sisters, knew about this, and had knowledge that Hays Johnson might need some assistance and desired to have the stock available in order to borrow money. Clearly enough, appellee knew of the existence of the stock and its status. It is significant that appellee's notice was addressed *to the bank,* whose corporate stock had been issued in the name of the father. While appellee testified that Mrs. J. C. Johnson's name was not on the paper when he signed it, he testified that what he had said in the paper addressed to the bank was: "This is to advise that anything and everything left by my father is for my mother". Thus, even if his mother's name had not been given in the writing, his own evidence supplied the omission. Again, it is significant that he raised no question about the stock until some thirteen years after he had written and signed the instrument and his mother and sisters had executed their papers giving notice to the bank of their wish and desire that Hays Johnson have the stock,

and some three years after the death of his mother. Apparently the stock certificate was in the possession of Mrs. Johnson at the time appellee executed his paper, and Hays Johnson had possession of the certificate or certificates thereafter. In our judgment the paper writing of appellee constituted a valid equitable assignment of his interest in the stock to his mother. In Venturi v. Silvio, 197 Ala. 607, 73 So. 45, we said:

"In equity no particular form is essential to the validity of an assignment; it may be in writing or by parol. It is sufficient if there is an intentional transfer or making over of the subject-matter, conferring a complete and present right in the assignee."

To hold in agreement with appellee's contention that there must have been a delivery of the stock certificate along with his assignment to his mother would be to require an act at once impossible and useless. Appellee could not deliver what he did not hold, possess, or own. He did not possess the stock. He owned not the stock, but merely an inchoate, undivided interest in it. As we have indicated, for aught appearing, the mother already had possession of the certificate. While not on all-fours with this case, our decision in Davis v. Wachter, 224 Ala. 306, 140 So. 361, upholding a gift of corporate stock, is by analogy sustentive of the conclusion here reached. It is our judgment that appellee divested himself of any interest he had in the bank stock and hence was not a joint owner thereof as alleged in his bill.

It results that since the complainant below, appellee here, failed to meet and carry the burden of proof resting upon him to show that he was a joint owner of the stock, his bill should have been dismissed. Hockstein v. Hamilton, supra.

The decree granting complainant the relief accorded to him is reversed and the cause remanded with directions that a decree be entered dismissing the bill.

Reversed and remanded with directions.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.

## On Rehearing.

█ The reinsistence upon the motion to dismiss the appeal is without merit. Emphasis is placed largely upon the asserted noncompliance with Equity Rule 56 in that there was failure of the court reporter to file the transcription of the evidence with the register and consequent denial of appellee's counsel of the right to examine the reporter's transcript. Rule 56 makes no such requirement, but only that the transcript of the reporter be "filed in the cause". Counsel mistakenly read into the rule the provisions of Code, Title 7, § 827, as amended, which by its terms applies only to cases at law.

█ Counsel, also, take issue with our conclusion that the Uniform Stock Transfer Act (Code 1940, Title 10, § 48) is not controlling in this case. The contention is that the cases cited by us as authority for the holding that there may be a valid equitable assignment of corporate stock have been rendered of none effect, having been decided anterior to the adoption of the Uniform Act in 1931. While we thought the Act did not apply to the peculiar facts and circumstances of this case, and are of the same opinion still, we were perhaps remiss in failing to bring forward the holdings of later cases. Sufficient to show that the rule of equitable assignment of corporate stock has not been abrogated by the Uniform Act, we need only to refer to our decision in Nashville Trust Co. v. Cleage, 246 Ala. 513, 21 So.2d 441, decided in 1945. There we dealt with a situation analogous to that here involved, an effort by one not in possession of the stock certificate to establish ownership of the stock. In construing the Uniform Act, we gave expression to these pronouncements:

The purpose of the Uniform Stock Transfer Act "seems to be to regulate transfers as respects the rights of living persons dealing among themselves in certificates of stock, and the creditors of stockholders. The Act necessarily gives value to the certificate of stock and its possession and ownership as between claimants. Section 48 et seq., Title 10, Code. It is therefore more of value than it was before the adoption of the Act. Jones v. State, 236 Ala. 30, 182 So. 404. * * * But it does not mean that the stockholder is not still the owner of an interest in the corporation. as theretofore."

In the Jones case above cited, which too arose after adoption of the Act, we said:

"With reference to the contention that certificates of stock are not property, we cannot agree with petitioner. We are not unmindful of our cases holding that it is the share of stock, and not the certificate which is the property right subject to levy and sale under execution. * * * But certificates are evidence of the ownership of shares and are valuable for that purpose and as a satisfactory method by which their ownership may be conveyed."

In Nashville Trust Co. v. Cleage, supra, we further said:

"Although the legal title to the certificate of stock is controlled by the law where the transfer was made, which involves a delivery of the certificate under the Uniform Stock Transfer Act, we doubt not that stock ownership in a domestic corporation has such a situs in Alabama as that the person owning it may by a transaction with another person occurring here create in the latter, as between themselves and their personal representatives, rights in it enforceable according to established and applicable principles in this State, although the personal presence of the stock certifi-

cate was absent at the time of the transaction and was never delivered in connection with it; but to be enforceable in equity the incidents of equitable principles and procedure which would generally be applicable must concur."

To like effect are Warr v. Collector of Taxes, 234 Mass. 279, 125 N.E. 557; Whitney v. Nolan, 296 Mass. 419, 6 N.E.2d 386; and Reinhard v. Sidney B. Roby Co., 110 Misc. 152, 179 N.Y.S. 781.

The following quotation from Whitney v. Nolan, supra, is quite apposite:

"Where the owner of stock, intending to make an absolute transfer, for lack of indorsement or because of some other defect in the mode of transfer, fails to transfer the legal title, it is held that by the transfer the equitable title goes over to the transferee * * * even though the provisions of that act [Uniform Stock Transfer Act] relative to transfers are not complied with, and though the act purports to state the only method of transfer."

It seems manifest that if we should adopt the strict construction of the Act inveighed on us by the appellee, all equitable principles bearing on the question would be abrogated, with the result that situations might arise where the true ownership of stock might never become vested. Such would have been the appellee's situation here if he had never assigned his shares to his mother, because he certainly never had any certificate delivered to him by his father.

From the foregoing it results as our judgment that the application should be overruled.

So ordered.

Opinion Extended and Application for Rehearing Overruled.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.