Forte, J.
This is an action for breach of convenants of a lease against LaBaron of New Bedford, Inc. (LaBaron) and on a written guaranty against the individual Wroble. Actions against other individuals and another corporation were dismissed by stipulation.
LaBaron filed a counterclaim in four counts: # 1. for interference with quiet enjoyment, #2. for an anticipatory breach, #3. for failure to pay real estate taxes, and #4. a claim under G.L.C.93A.
There was evidence that Grad was the owner of a building located in Lawrence wherein on the first floor he operated a clothing store through the corporate entity Grad’s Town and Country Clothes, Inc. (Clothes). By a lease dated October 20, 1975, Grad leased the second floor to LaBaron for a beauty shop under an arrangement whereby to the public the beauty shop was to appear as a department of Clothes. The agreed rent was based upon a percentage of LaBa-ron’s net sales but with a minimum annual rental of $9,000 per year payable monthly of at least $750, an accounting to be made annually. There was no acceleration clause in the lease in the event of a default of monthly rent. In addition, LaBaron would pay monthly its share of the telephone bills and advertising expenses. Among the clauses were the following:
Art. 6(i)... Any leasehold improvement made by the Tenant after such consent shall have been given shall become the property of the Landlord upon the expiration or other sooner termination of this lease; provided the Landlord shall have the right to hold Tenant’s fixtures if the Tenant is in default of the lease; however, the Landlord shall have the right to request the Tenant to remove Tenant’s fixtures at the Tenant’s cost upon the Termination of this lease, except that Tenant may remove sinks and all movable equipment if not in default of this lease.
Art. 6(v) In the event of bankruptcy, receivership or creditor’s proceedings being filed by or against Landlord, Tenant shall have the rights (1) to immediate payment to it of all money in the Trust Account described in Paragraph (1) and (2) to terminate the lease immediately or at any time proceedings are pending and/or (3) to continue operation but retain all receipts of its business in its own bank account.
The lease also required Grad to renovate the second floor for use as a beauty shop, which he did at a cost of approximately $25,000.
*68 Wroble, owner of 100% stock in LaBaron’s, personally guaranteed in writing LaBaron’s performance. The relevant clauses in the written guaranty are:
1. (a) Guarantor unconditionally guarantees to Landlord and Landlord’s successors and assigns, the full and punctual performance and observance, by Tenant, of all the terms, convenants and conditions in said lease contained on Tenant’s part to be kept, performed and observed.
(b) If, at any time, default shall be made by Tenant in the performance or observance of any of the terms, covenants or conditions in said lease contained on Tenant’s part to be kept, perform and observe the same, as the case may be, in place and stead of Tenant.
Evidence was also introduced that Grad had not paid real estate taxes for the years 1975 and 1976. which with interest amounted to approximately $58,000. Because of unpaid taxes, the City of Lawrence pursuant to G.L.c. 60, §53, 54 through its tax collector completed a form for taking the building for nonpayment of taxes as defined in G.L.c. 60, §43. This form was dated November 10, 1977 and notarized December 29, 1977. There is no evidence that this “tax title” was ever recorded. In fact, the copy attached to and made part of the report is blank on that part of the form indicating time received at the Registry of Deeds, book and page of recording, document number, and attestation by the Register. Both Grad and Wroble testified they were unaware whether the Lawrence tax taking had been recorded.
On January 26,1978, the mortgagee bank voted to call the note and to proceed with foreclosure on Grad’s property. However, the only action taken by the bank in addition to the January 26th vote, was to inform Grad of its vote by letter dated February 15, 1978.
A few days prior to January 3Í, 1978, Grad ran an advertisement in the Lawrence Eagle Tribune informing the public of “Grad’s Reorganization” including “We must raise cash or we’re out of business”; ¡“Everything must be sold...”
Further evidence indicated that Wroble decided to abandon LaBaron’s leasehold, and arranged with a moving company to remove on January 31,1978 LaBaron’s property from the building, valued at approximately $15,000 when purchased. All of the sinks, chairs and desks used in the beauty parlor were removed but no physical damage was done to the building.
No rent was paid after January, 1978. The second floor space was only suited for a beauty parlor. Although Grad attempted to secure another tenant, he was unsuccessful.
At the close of the evidence, the plaitiff filed requests for rulings all of which were either allowed or found not applicable except the following three, which were denied:
#1. The terms ‘bankruptcy, receivership or creditors’ proceedings’, within the context of the lease between the parties, does not include either a vote by a mortgagee bank to call a note or a tax taking by municipality.
#2. A ‘proceeding to collect’ is the invocation of a judicial determination of a matter in dispute in accordance with a usual practice of the courts by any appropriate civil process. Lait v. Sears, 226 Mass. 119.
#12. The intent of the parties, as expressed in a contract, determines whether or not a particular item is or is not a fixture.
The court made a finding that the property removed by LaBaron was personal property and not fixtures; and a finding that tax title action by the City of Lawrence and the mortgagee’s decision to proceed with foreclosure were both *69 creditors’ proceedings permitting LaBaron to terminate the lease.
The plaintiff is aggrieved by the denial of the three requests for rulings and the above findings.
I. Focusing on “creditors’ proceedings” (there was no evidence of bankruptcy or receivership), we find that “creditor’ ’ means a person to whom a debt is owing by another. See BLACK’S LAW DICTIONARY (4th ed., 1968). Although generally a tax is not classifiable as a “debt”, the parties in the lease intended the word creditor to mean a party to whom money is owed by another. With this meaning, both the mortgagee bank (holder of Grad’s promissory note secured by a mortgage) and the City of Lawrence, to which Grad owed taxes can be considered creditors within the meaning of the word used in the lease.
Turning to the word “proceeding’ ’, we find the familiar or usual connotation is judicial and generally synonymous with the words “action or suit”. Gonzales v. Gonzales, 240 Mass. 159, 161 (1921). Proceedings may have different meanings when used in diverse connections. Lait v. Sears, 226 Mass. 119 (1979). “Creditors proceedings” is not a provision of a statute or a common law doctrine but here it is an element of a written lease. It is well established that a lease may be examined in the light of all the circumstances attending its execution in order to resolve any ambiguities therein and to ascertain the true meaning of the language as used and intended by the parties. Talbot v. Rednalloh Co. 283 Mass. 225 (1933). The reported evidence indicates that Article 6(v) was negotiated and insisted upon by Wroble to protect LaBaron from adverse effects due to creditor’s activity resulting from Grad’s financial situation - to give LaBaron the right to terminate the lease whenever any proceeding of a creditor effects La Baron's business or leasehold interest
The vote by the mortgagee bank, even with the letter of February 15, 1978, was not such proceeding that effected LaBaron’s business or leasehold interest. Further action, such as actually foreclosing would be necessary. As of January 31, 1978, the vote of the bank was not a “creditors’ proceeding” as used in the lease.
In regard to the Lawrence tax collector, the signing of an instrument of taking, even with his signature being notarized was without any valid effect on Grad or LaBaron. “An instrument of taking shall not be valid unless recorded within sixty days of date of taking...” G.L.c.60§54. In fact, the document, made part of the report, states on its face: “This instrument not valid unless recorded within 60 days of the date of taking.”
There is no evidence reported either in the report or the judge’s findings, see Olofson v. Kilgallen, 362 Mass. 803, (1973), that the document was ever recorded. The Appellate Division is confined to the reported evidence and cannot consider matters not contained therein. Tranfaglia, Tr. v. Security National Bank, 53 Mass. App. Dec. 25 (1973).
Neither the bank’s note nor the signing of an instrument of taking came within the lease’s phrase “creditor’s proceeding”.
Therefore, LaBaron had no right to terminate the lease on January 31, 1978.
There was error in denying request # 1. The correct ruling should have been - as to the vote of the bank - allowed; as to the tax taking - not applicable.
II. There was no error in denying request for #2 for two reasons: first, the quoted phrase is not the phrase used in the lease, and secondly, even the citation give, Lait v. Sears, 226 Mass. 119 (1917), at page 124 states “(d)oubtless these words 'proceedings to collect’ may have different meanings when used in diverse connections.”
III. There was error in denying request #12.
Plaintiff’s request for ruling of law #12 implicitly seeks a determination that *70 the items or equipment removed by the defendant upon its abandonment of the leased premises were trade fixtures as opposed to personal property.
What constitutes a trade fixture, customarily depends upon the intention of the parties, as the plaintiff herein properly contends. See, e.g., Hook v. Bolton, 199 Mass. 244, 246 (1908); Stone v. Livingston, 222 Mass. 192, 195 (1915); Nadia Bazata, 303 Mass. 496, 499 (1939). Such intention is to be gleaned, however, from all operative circumstances and ordinarily presents a question of fact or a mixed question of law and fact for the trial court. Medford Trust v. Priggin Steel Gauge Co., 273 Mass. 349, 353-354 (1930; Bay State York Co. v. Marrix, Inc., 331 Mass. 407, 411 (1954).
Article 6(i) of the lease specifically addresses the parties intent as it reads”... the landlord shall have the right to hold tenant’s fixtures if the tenant is in default of the lease ... (the) tenant may remove sinks and all movable equipment if not in default of this lease.” By abandoning the leasehold and not paying rent the tenant was in default, and according to the expressed intent had no right to remove its sinks, etc.
No issue has been raised on appeal concerning the judge’s findings for the plaintiff on paragraphs #8 (recovery of LaBaron’s share of the advertising costs) and #9 (recovery of LaBaron’s share of the telephone expenses). These findings stand.
As to the remaining causes of action, including the counterclaim, the findings are vacated and the matters are returned for a new trial.

So ordered.